IN RE the MARRIAGE OF: Barbara L. GRUMBECK, Petitioner-Respondent,

v.

Jeffrey S. GRUMBECK, Respondent-Appellant.

Court of Appeals

*No. 2005AP2512. Oral argument August 16, 2006. —Decided September 13, 2006.*

2006 WI App 215

(Also reported in 723 N.W.2d 778.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of and oral argument by *Thomas W. Anderson, Jr.,* of *Anderson Law Office* of Kenosha.

On behalf of the petitioner-respondent, the cause was submitted on the brief of and oral argument by *Judith M. Hartig-Osanka, S.C.* of Racine.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Jeffrey Grumbeck appeals the property division in his divorce from Barbara Grumbeck. The circuit court found that Jeffrey's shares of two businesses were gifts and were therefore nondivisible. It awarded the shares to Jeffrey but then divided the remaining estate unequally, giving Barbara extra assets amounting to exactly half the value of Jeffrey's

shares. The end result was that Jeffrey and Barbara each received the same total award they would have had if the shares had been divisible. Jeffrey argues that the circuit court's maneuver was contrary to Wisconsin's statutory scheme, which allows the division of gifted assets only in cases of hardship to the other spouse. We agree and therefore reverse the circuit court on this issue. Though a circuit court may consider substantial gifted assets when dividing the marital estate, it may not divide the marital estate to work a de facto splitting of those assets where there is no hardship. Jeffrey further claims that the circuit court erred when it ordered him to pay maintenance to Barbara from the proceeds of his covenant not to compete with his former employer, contending that the covenant springs from his gifted shares and is therefore also nondivisible. We disagree with Jeffrey and affirm the circuit court on this matter; the payments are income to Jeffrey and are not part of the nondivisible gift.

¶ 2. Jeffrey and Barbara were married in 1963. Before and after that time, Jeffrey was employed by Beauti-Vue Products, a family business that manufactures window blinds. Over the years, Jeffrey filled many roles at the company, and at some point, he received from his father and uncle a twenty-five percent interest in Beauti-Vue and in a second corporation which owns the land upon which the factory sits. In 1985, on the eve of the effective date of Wisconsin's marital property law and at the urging of Beauti-Vue's lawyer, Barbara and Jeffrey signed a marital property agreement designating the shares to be owned solely by Jeffrey. A few months prior to the commencement of divorce proceedings, Jeffrey reached an agreement to sell his share of the companies to the co-owners for approximately $622,000. As part of the same agreement, Beauti-Vue

agreed to pay Jeffrey $300,000 over five years in consideration of his agreement not to compete with Beauti-Vue.

¶ 3.  At the divorce trial, the circuit court ruled that Jeffrey's shares in the corporations were gifts and did not make a finding of hardship to Barbara if Jeffrey were allowed to keep them. The court noted that with the evidence available, it would be difficult to establish whether the shares had increased in value by Jeffrey's efforts such that Barbara would be entitled to some share of the appreciation. The court avoided the problem, however, by awarding all of the shares to Jeffrey and then turning to the division of the remaining estate.

¶ 4.  Specifically, the court stated:

> I'm going to start with the proposition that all of that property and the assets that derive from it now were gifts and under the general rule should be severed off from the marital estate.
>
> Nevertheless, I've decided for the reasons I'm going to discuss and principally, not exclusively, but principally, given the duration of the marriage, I'm going to divide the estate evenly and I should say with respect to the disputed assets. And that's because of the 41–year marriage, and this is clearly a maintenance case.

Pointing out that, by statute, a court may divide property unequally after considering a list of factors, the court mentioned several: the length of the marriage; Barbara's contribution to the marriage in raising the children; the fact that it would be awarding only $30,000 per year in maintenance to Barbara (one-half of Jeffrey's pay under the covenant not to compete); and the goal of allowing Barbara to be self-supporting at a standard of living reasonably comparable to that which she enjoyed during the marriage. The court then noted:

Mr. Grumbeck, if the Court were not to equalize the division of property, would have substantial assets which would not be subject to division ... about 40 percent, I think, of the entire marital estate[1]—well, I shouldn't use the word "marital estate"—the gross combined marital estate I'll call it ....

. . . .

So I am going to deviate from the statutory standard of equal division of nongifted property and divide all of the wealth accumulated by these people equally.

It directed the parties to prepare a final property division whereby Jeffrey and Barbara would each receive half the value of all the property previously owned by either, including the gifted assets.

¶ 5. The court finally turned to maintenance payments, denying maintenance to Jeffrey and awarding Barbara half of the money that Jeffrey would receive under the covenant not to compete. Jeffrey appeals both the property division and the maintenance payments.[2]

¶ 6. WISCONSIN STAT. § 767.255(2)(a)1. (2003–04)[3] provides that any property given to one party by gift remains that party's property and cannot be divided by

---

[1] The forty percent figure apparently includes the Beauti-Vue Profit Sharing Plan & Trust, the division of which has not been appealed.

[2] Barbara filed a motion to dismiss Jeffrey's appeal as untimely. We denied the motion, stating that we did so on the basis of the information available to us at the time and that we would consider the motion again after transmittal of the record to this court. The record confirms that Jeffrey filed timely, and so we restate our denial of Barbara's motion to dismiss.

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

the court. The exception to this rule is in paragraph (b), which directs that the court may divide the property where failure to do so would result in hardship on the other party. "Hardship" involves financial privation and requires something more than an inability to maintain the predivorce standard of living. *Doerr v. Doerr*, 189 Wis. 2d 112, 124, 525 N.W.2d 745 (Ct. App. 1994).

¶ 7. As to all other property, WIS. STAT. § 767.255(3) establishes a presumption that it be divided equally but allows a court to depart from equal division after considering all of a list of several factors, one of which is whether one of the parties has substantial nondivisible assets.[4]

---

[4] The factors are:

(a) The length of the marriage.

(b) The property brought to the marriage by each party.

(c) Whether one of the parties has substantial assets not subject to division by the court.

(d) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

(e) The age and physical and emotional health of the parties.

(f) The contribution by one party to the education, training or increased earning power of the other.

(g) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

(h) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having physical placement for the greater period of time.

¶ 8.   In the case before us, there can be no finding of hardship; the divisible estate alone is over $4 million. The circuit court was therefore quite correct to conclude that the gifted assets properly belong to Jeffrey. The question is whether it was within the circuit court's discretion to make a division of the parties' other property such that it essentially nullified this conclusion. We hold that it was not.

¶ 9.   Our holding is compelled by the fact that WIS. STAT. § 767.255(2) allows a court to divide gifted assets *only* where doing otherwise would result in hardship. The statute operates to protect the intent of the giver, which in this case was clearly of major concern; though the parties agree that the marital property agreement does not apply to divorce, it does show that Beauti-Vue's

---

(i) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

(j) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(k) The tax consequences to each party.

(L) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

(m) Such other factors as the court may in each individual case determine to be relevant.

WIS. STAT. § 767.255(3).

owners wished to keep control of the company in a small group of hands. The statute also serves to distinguish between the fruits of the marriage, which the law recognizes are due to both spouses, and gifts or inheritances that are kept separate from the marital estate. Only in the case where carrying out the giver's plan for the gift would cause "financial privation" to the other spouse does the statute allow a court to deprive the gifted party of all or part of the assets. *See* § 767.255(2)(b); *Doerr*, 189 Wis. 2d at 119, 124.

¶ 10.  Barbara argues that this is not what happened here; Jeffrey kept his shares, but the trial court considered them, along with some of the other WIS. STAT. § 767.255(3) factors, and awarded her a bit more than half of the marital estate, the division of which is within the sound discretion of the trial court. We have examined the record, and while it is true the circuit court described its reasoning in this way, the stark fact remains that the court awarded Barbara extra money *exactly equal to one half the value of Jeffrey's gifted property.* Further, the court stated that it would "divide the marital estate equally," "divide all of the wealth accumulated by these people equally" and "divide the estate evenly . . . with respect to the disputed assets," and also referred to what it called the "gross combined marital estate." Regardless of the court's procedure, what it clearly achieved was a de facto division of the gifted property. This runs afoul of the legislative policy on gifted property contained in § 767.255(2)(b); it therefore constitutes a failure to apply a proper legal standard and is an erroneous exercise of discretion. *See LeMere v. LeMere*, 2003 WI 67, ¶ 14, 262 Wis. 2d 426, 663 N.W.2d 789.

¶ 11.  We recognize, as Barbara points out, that the presence of "substantial assets not subject to divi-

619

sion by the court" is named in WIS. STAT. § 767.255(3) as a factor to be considered in departing from equal division of property. *See Spindler v. Spindler*, 207 Wis. 2d 327, 341, 558 N.W.2d 645 (Ct. App. 1996). The circuit court here considered this and other factors, though not all of them. These factors are statutory provisions whose meaning we must preserve, just as we must preserve the hardship requirement of § 767.255(2)(b). These two statutes clearly stand in some tension with one another, and we will not here attempt to chart the precise boundaries of a circuit court's proper discretion in reconciling them.

¶ 12. However, we note that WIS. STAT. § 767.255(3) begins by directing the circuit court to *presume* that the marital estate should be evenly divided. Our cases have not explored the strength of this presumption a great deal, and we have often deferred to the discretion of the circuit court, but it is inherent in the concept of a presumption that it must have weight. Absent some special circumstances demonstrating that some unfairness would result from equal division, the presumption should stand. *See Schinner v. Schinner*, 143 Wis. 2d 81, 98, 420 N.W.2d 381 (Ct. App. 1988). This is especially so where departure violates the policy of § 767.255(2). *See LeMere*, 262 Wis. 2d 426, ¶ 29 (it was error to consider some of the statutory factors in a way that eviscerated the legislature's purpose).

¶ 13. The factors enumerated by the circuit court are present in many, many marriages. If we were to uphold the circuit court's unequal property division, it would stand for the proposition that in any marriage of long duration where both parties have made contributions to the marriage, a circuit court would be free to circumvent the hardship requirement and divide gifted

property. This cannot be the law if we are to give any effect to the legislative policy set forth in Wis. Stat. § 767.225(2). We do not here decide what sort of special circumstances would justify an unequal award in a different case where gifted property is considered; we only state that a long-term marriage involving contributions to that marriage by both parties is not a "special circumstance."[5]

¶ 14. Barbara calls our attention to *Derr v. Derr*, 2005 WI App 63, ¶ 13, 280 Wis. 2d 681, 696 N.W.2d 170, in which we stated that in the area of divorce property divisions "there are sometimes different routes to the same result." We went on to stress the importance of correctly categorizing assets as divisible or nondivisible in order to facilitate review, even though we recognized that the categorization might merely be a starting point for the court's exercise of discretion. *Id.* That case is not contrary to our result here, as it simply noted that a court could in its discretion consider substantial nondivisible assets in dividing marital property, *id.*, ¶ 12, and did not address the limits of that discretion.

¶ 15. We have concluded that the trial court erred in its de facto division of Jeffrey's shares. However, we do not agree with Jeffrey that it erred further in awarding maintenance to Barbara out of the proceeds of his covenant not to compete with Beauti-Vue. Jeffrey argues that this money is "due to" his former ownership

---

[5] Barbara argues that the court considered other factors and points to various comments in the trial transcript. However, the offhand references cited do not demonstrate the court's application of the Wis. Stat. § 767.255(3) factors with the "proper statutory rigor" necessary to support departing from the presumption of unequal division. *LeMere v. LeMere*, 2003 WI 67, ¶ 25, 262 Wis. 2d 426, 663 N.W.2d 789.

of Beauti-Vue, which we have already determined to be a gift, and that it is therefore protected by WIS. STAT. § 767.255(2). Barbara contends, and we agree, that the payments are in exchange for a service to be performed by Jeffrey; namely, Jeffrey is being paid to refrain from doing business in a way that would be harmful to Beauti-Vue. The fact that these payments were negotiated downward as a part of the deal disposing of Jeffrey's interest in the companies does not change the nature of the payments or make them a part of his former ownership. As such, the circuit court was free to award a portion of the payments as maintenance to Barbara under WIS. STAT. § 767.26, and we affirm the court on this matter.

¶ 16. There remains the issue regarding the scope of our remand. Had the record shown and had the trial court alluded to some special circumstances beyond the mere fact that this was a marriage of long duration that was "clearly a maintenance case," we would remand to the trial court with directions that it consider whether those special circumstances merited an unequal division of the property. But the record does not so show and the trial court did not list any circumstance other than the long-term marriage, the parties' contributions to that marriage, and the limited term of maintenance ordered. In the absence of evidence showing such special circumstances, we remand with directions to enter judgment dividing the marital estate equally without regard to the gifted property.

No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.